UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| A T & T CORPORATION, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | CAUSE NO. 3:07-CV-13 RM |
| ) | |
| THE RIDGE COMPANY, f/k/a ) | |
| THE RIDGE COMPANY, INC., ) | |
| ) | |
| Defendant ) | |

OPINION AND ORDER

Plaintiff AT&T Corporation has sued The Ridge Company, f/k/a The Ridge Company, Inc., under AT&T Tariff F.C.C. No. 30 (the "Tariff") for long distance services AT&T claims to have provided in the sum of $27,393.76. The case is before the court on cross-motions for summary judgment. For the reasons that follow, the court grants Ridge's summary judgment motion and denies AT&T's summary judgment motion.

Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986). Cross-motions for summary judgment must be evaluated separately, with all reasonable inferences drawn in favor of the party adverse to the motion under consideration. Hess v. Reg-Ellen Machine Tool Corp., 423 F.3d 653, 658 (7th Cir. 2005).

The events pertinent to this case occurred in 2005, when Ridge's selected long distance carrier was Dodson Group, and its selected local exchange carrier was SBC. Ridge once had used AT&T's long distance services, but had not done so for some time. Around the middle of September, Dodson Group contacted Ridge about suspected fraudulent calls on Ridge's telephone lines. Ridge and Dodson Group addressed measures to prevent further fraudulent calls over Ridge's lines, and Dodson Group waived any charges arising from the fraudulent calls.

In October 2005, Ridge received a bill from AT&T for $27,393.76, with a "Bill Close Date" of October 10, 2005, charging for 342 international long distance phone calls made between September 7 and October 2 to mobile phones with international numbers and to numbers in Afghanistan, Cuba, Ecuador, Egypt, Libya, Morocco, Pakistan, Romania, Senegal, Tunisia, Ukraine, and Yugoslavia. Ridge employees and agents neither made nor authorized those calls. Ridge contacted AT&T and disputed the charges.

Between September 7 and October 2, Ridge's phone lines ran through Ridge's telephone system, consisting of a Norstar Meridian Modular Integrated Communications System with Nortel Meridian telephones and Norstar-Plus Voicemail. A representative of Sprint United Telephone had recommended this phone system to Ridge, and Sprint United Telephone installed it at Ridge's offices. Ridge's telephone system allowed remote access to voice mail accounts within the network by dialing into the network through an outside telephone line. A person trying to access any voice mail account from any location had to enter the proper

2

four-digit pass code intended to protect Ridge's telephone system against unauthorized access. Every thirty days, Ridge's telephone system prompted voice mail account users to change that extension's pass code; access was denied to the voice mail account if the pass code was unchanged. An AT&T representative expressed the belief that unauthorized third parties had exploited the remote access feature to hack into voice mail accounts in Ridge's telephone system.

The parties agree that the Tariff applies only if Ridge was AT&T's customer, and they further seem to agree that "customers" consist of those who affirmatively order AT&T services and also those who constructively order services from AT&T by failing to take reasonable steps to prevent unauthorized charging of AT&T long distance calls to their telephone lines. Both sides point to the FCC's decision in United Artists Payphone Corp. v. New York Tel. Co., 8 F.C.C.R. 5563 (1993), which set forth the constructive (or "inadvertent") customer theory, and AT&T v. Community Health Group, 931 F. Supp. 719 (S.D. Cal. 1995), which applied it.

In United Artists, a provider of pay phones challenged bills for unauthorized calls. United Artists contended it wasn't a customer of AT&T because it never ordered AT&T services through any affirmative selection process. AT&T argued that United Artists effectively requested service by making it possible for its pay phones to be used either to send access code calls to the AT&T network or accept collect or third-party-billed calls carried by AT&T. The Federal Communications Commission construed the tariff provision to require some affirmative act indicating an intention that AT&T services be available for one to become an AT&T

3

"customer," but pre-subscription isn't the only sufficient affirmative act: United Artists could have become an AT&T "customer" through the affirmative act of connecting its pay phones to the public network in such a way that access code calls could be sent to the AT&T network and collect or third-party-billed calls carried by AT&T could be accepted at the pay phones.

The F.C.C. found, though, that United Artists had taken reasonable steps to prevent unauthorized calls from its pay phones. When it ordered public access lines from New York Telephone, it specified that the lines were to have no primary interexchange carrier, ordered billed number screening services and 10xxx restrict services from New York Telephone, and programmed its pay phones to block operator-assisted and direct-dialed calling outside the local area. Accordingly, United Artists wasn't a constructive "customer" of AT&T for purposes of the tariff. 8 F.C.C.R. at 5566.

In Community Health Group, a hacker breached the private branch exchange telephone system of a group of health-care entities, and A&T wanted to be paid for the ensuing charges. The district court cited United Artists for the proposition that one could become a "customer" for these purposes either by ordering services or by "creating an 'inadvertent carrier-customer relationship' by failing to take steps to control unauthorized charging of AT&T long distance calls to the party's telephone number." 931 F. Supp. at 722. The defendants said they had reasonably relied on other entities (Centrex Equipment Associates, Inc. and Pacific Bell) to safeguard their phone system since they, the defendants, had no

4

expertise in the field. Other than that conclusory assertion, though, the defendants offered no specifics of what they had Centrex or Pacific Bell do. The defendants presented no evidence "that they or their equipment lessors took any steps to implement line-blocking features, institute an operator-screening service, undertake their own line-monitoring, or follow any of the other 'affirmative safeguarding measures' that the FCC has recognized as a valid defense to a 'constructive ordering' allegation," 931 F. Supp. at 723, so the court found no triable issue as to whether the defendants were a constructive AT&T "customer" for purposes of the tariff.

The parties also discuss AT&T Corp. v. Midwest Paralegal Services, Inc., No. 06-CV-249, 2007 WL 1341448 (E.D. Wis. May 7, 2007), a case that presents some similarities to Ridge's situation. Midwest Paralegal, like Ridge, was not a pre-subscriber of AT&T's services. Midwest Paralegal's PBX system, like Ridge's, was protected by four-digit access codes required of those calling in from off-site. The opinion makes no reference to mandatory monthly pass code changes or denial of access to accounts with unchanged pass codes. An unauthorized user ran up a bill of more $10,000 around Christmas 2004, and AT&T demanded payment from Midwest Paralegal. The court denied AT&T's summary judgment, finding that a reasonable jury could find that Midwest Paralegal took sufficient affirmative steps to control unauthorized calling, and so was not a customer of AT&T for purposes of the tariff. 2007 WL 1341448 at *8.

5

Turning back to today's case, Ridge doesn't dispute the principle in <u>United Artists</u>, <u>Community Health Group</u>, and <u>Midwest Paralegal</u> that it could become an AT&T "customer" for purposes of the tariff by doing too little to prevent thieves from using Ridge's equipment to steal AT&T services. Ridge contends that like <u>United Artists</u>, it took reasonable steps to prevent unauthorized access; indeed, it implemented more safeguards than the basis for denial of summary judgment to AT&T in <u>Midwest Paralegal</u>. And unlike the defendants in <u>Community Health Group</u>, Ridge presents evidence of what it (and its contractors) did: it limited access to voice mail accounts by use of four-digit pass codes that had to be changed every thirty days and denied access to accounts for which the pass codes weren't changed.

AT&T's submissions never quite articulate why these precautions against unauthorized access fell short of reasonable. AT&T notes that stronger precautions were taken after the unauthorized use (six-digit pass codes were instituted), but subsequent remedial measures don't prove that earlier measures were unreasonable. *See* WIGMORE, EVIDENCE § 283, at 175 (Chadbourn rev. 1979).

AT&T also says the imposition of reasonable precautions is an affirmative defense that was not specifically pleaded in Ridge's answer. The court isn't entirely persuaded that the issue is a matter to be pleaded and proven by the defendant; if AT&T is correct, a carrier bears no burden of proof whatsoever to establish that a party was a "customer" within the meaning of the tariff upon which the carrier relies. In any event, Ridge's answer raises as an affirmative defense that Ridge is

6

not subject to the terms of the tariff, a "defense" that encompasses an assertion that Ridge did not inadvertently become a customer by failing to take reasonable steps to prevent unauthorized use.

The summary judgment record contains nothing that would allow a reasonable trier of fact to find that Ridge became a customer of AT&T (for tariff purposes) by failing to take reasonable affirmative steps to prevent unauthorized calling. Accordingly, regardless of whether the record is viewed as favorably as reasonably possible to Ridge (as it must be viewed on AT&T's motion) or to AT&T (as it must be viewed on Ridge's motion), no genuine issue of material facts exists, and because it is not a subscribing or constructive customer of AT&T, Ridge is entitled to judgment as a matter of law.

Accordingly, the court GRANTS the defendant's motion for summary judgment [docket # 24] and DENIES the plaintiff's motion for summary judgment [docket # 32]. The clerk shall enter judgment for the defendant.

SO ORDERED.

ENTERED:   June 23, 2008

    /s/ Robert L. Miller, Jr.
Chief Judge
United States District Court